Good morning, Illinois, public court 1st district court is now in session. The 2nd division, the honorable justice Nathaniel house presiding case number 24 dash 0379 people of the state of Illinois. Richard limb loan versus best by stores. Good morning, my name is Nathaniel house. I'm a judge of the appellate court. And presiding over this case with me, our justices, David Ellis and Rena van time. This case is being heard via zoom. Who are the attorneys representing the appellate? Please state your name. Thank you. Your honor, Paul Burks, representing relators, Richard and Ralph Lindblom. All right, who's representing the athlete? Good morning, your honor, Michael McCutcheon on behalf of best by stores LP. All right, I'm going to proceed this way this morning. We're going to allow each side intern to have 10 minutes of basically uninterrupted presentation. At the end of that presentation, the. Judges will have an opportunity to ask questions if they have any. After that, the appellee will be allowed to present its 10 minutes and the appellant will be allowed to make a short rebuttal after which the attorneys will be. I mean, the judges will be asking questions at that time. We'll try to give you a 2 minute heads up that your time is running out. Do you have any questions about how we're going to proceed today? No, your honor. Thank you. No, you're okay. Very well, then Mr Burks, you may proceed when you're ready. Good morning, your honor may please the court. My name is Paul Burks and I represent the relators, Richard and Ralph Lindblom. The Lindblom brothers ran an appliance store in Schaumburg, Illinois for their entire adult lives. And before them, their father ran that same store. So that that store of advanced appliances was in Schaumburg for 50 years. And defendant Best Buy is the largest electronics retailer in the United States. And it sells, as we all know, and installs TVs and speaker systems computers. But it also sells and installs dishwashers and microwaves. So that is where their businesses and my client's business overlap. Best Buy undersold my clients and the other independents. What are referred to as the independent appliance retailer stores in Illinois. By not charging tax on these certain installed appliances. And Best Buy's position was it didn't owe the tax. Because while it was an electronics retailer, most of the time. It was a construction contractor when it sold and installed dishwashers and microwaves. And this theory could not be reconciled with the plain language of the retailer's occupation tax. Or the relevant regulations or common sense. But the scheme did work for a while. And Best Buy was able to maintain parity with the other multi-state retailers. By taking this aggressive tax position in Illinois. And using their well-staffed, well-funded tax compliance departments. To find these types of opportunities for tax savings. The Lindblom's didn't have this. They had a store. They had an accountant who read the tax regulations. They followed the rule. And they paid the tax. And they suffered. They suffered lost sales. They suffered a competitive disadvantage. And the state and the local government suffered lost tax revenue. And then thanks to the Lindblom's in 2015. The Department of Revenue caught on. It issued a compliance alert. Instructing the retailers that sell appliances to collect sales tax. And that compliance alert was issued in June of 2015. And what did Best Buy do? They did not start collecting and remitting tax in Illinois. Until 2020 or 21. And if a fact finder gets a chance to look at the evidence. We think it will conclude that the reason Best Buy did not follow the law. Was because doing so would have put it at a competitive disadvantage. Against their main competitors. The Lowe's and the Home Depot's. And the other multi-state retailers. They would have been in the same boat as the Lindblom's. And the other Illinois-based independent retailers. And the Lindblom's sued Best Buy under the Illinois False Claims Act. Judge Curry on the circuit court granted to Best Buy summary judgment. We think this court should reverse and remand for trial. The court granted summary judgment on three grounds. I'd like to start with the issue of scienter. Whether Best Buy acted knowingly. And in light of the Lowe's decision. I think it makes sense to break down that scienter question. Into a pre-compliance alert. And a post-compliance alert period. And for the post-compliance alert period. Best Buy is just like Lowe's. Best Buy received the compliance alert. Just like Lowe's. Best Buy did not change its practice. In light of the compliance alert. It continued to employ the same tax practices. It employed prior to the alert. Which was not to charge tax. Not to collect tax. Not to remit the tax. On the installed dishwashers and microwaves. It continued to do that for a full five years. After getting direct information from the department. That it was wrong. In fact. It went back to the department. Hand in hand. With its supposed competitors. And asked the department to change its position. From the compliance alert. And it received in November 2016. Another letter from the department. Reaffirming the position. That they took in the compliance alert. And Best Buy still didn't change its practice. It could have changed its practice. And contested the department's position. It chose not to do that. And the question is why? Knowing what the law was. Why doesn't Best Buy comply? That your honors. Is a fact question. A fact finder should look at the documentary evidence. Assess the credibility of the witnesses. And decide if Best Buy's purported reasons. For failing to pay the sales tax. In light of the compliance alert. In light of the 2016 letter. Were knowingly false. Or revealed a failure to exercise prudent judgment. Based on the evidence in the record. A fact finder could conclude. That Best Buy did not change its practice. Because it was concerned. About the competitive consequences of compliance. It was not concerned. About the accuracy of its returns. And that is a knowing violation. So what is the evidence in the record? On which a fact finder could reach that conclusion? Let's look at. If you look in the record at 3821 and 3862. You have emails from Best Buy. The day after the compliance alert comes out. To its supposed competitors. Lowe's and Home Depot. And it asks them. What is the impact on Lowe's and Home Depot. Of this compliance alert? And it goes on to say. We want to know. Because we want to quote. See if Best Buy will be taking. A consistent approach with Lowe's. Assuming we make a change. To begin charging sales tax. To customers at point of sale. So you have Best Buy saying. To its supposed competitors. We see the compliance alert. We need to change our practice. But we're not going to do it. Unless you do it. Lowe's and Home Depot respond. We're not changing our practices. And then at 3874 in the record. You will see an email. Internal to Best Buy. Where they say. We've spoken with Lowe's. We've spoken with Home Depot. Our competitors aren't making changes. So we are not making any changes. To our current processes. And I think. We think. That a fact finder. Looks at that evidence. They will see the motivation of Best Buy. They will see that they knew. What the law required of them. And they didn't do it. Because of the competitive disadvantage. It would put them at. And what does the record. Also not reveal. It doesn't reveal. In the post compliance alert period. Any correspondence. Any analysis. Any attempt by Best Buy. To go back into the regulation. To go back into the law. To say. Are we doing this right? To analyze. Whether the compliance alert. And the subsequent letter. Had corrected a misimpression. They don't do that. In fact. On July 1. Two weeks after the emails. I just described to you. We have an internal email. Within Best Buy. Where their internal compliance. People ask. Quote. Do we have any contractor licenses? So this is in July of 2015. They have not. They have been claiming. To be a construction contractor. For the entire damages period. And in July of 2000. For the first time. They're asking. Do we have any contractor licenses in Illinois? And the answer is no. Um, and. But you don't see any attempt. To make that analysis. So if they're not. Making a good faith effort. To determine their liability. And they know what. The compliance alert requires. And they're, they're not following it. Because of the competitive disadvantage. That's a knowing violation. And we think that a. A fact finder should be allowed. To see that evidence. And make that determination. For the post compliance alert period. Um, turning to the. Pre-compliance alert period. There's a. In the Lowe's decision. The court found. That Lowe's did not knowingly. Avoid the tax in the. Pre-compliance alert period. And it pointed to 2 factors. The audit of Lowe's. And Lowe's good faith investigation efforts. And on both of those grounds. Best Buy is different than Lowe's. And so the outcome should be different. This case should go to trial. On that period as well. First, with respect to the audit. The court was careful. In the Lowe's decision. Not to immunize every taxpayer. That was audited from false claims. From false claims at cases. Thank you, your honor. The immunity position. Was actually raised in the Lowe's case. And in footnote 3. The court recognized. That an audit. Does not immunize a taxpayer. From a false claims at case. And it identified. Instead, 4 factors. That must be present in the audit. For the, for the taxpayer. To be able to rely on it. It has to be cut. The audit has to cover. The same period of the case. The taxpayer has to submit. Data to the department. That specifically includes. Entries concerning tax treatment. Of installed dishwashers. And microwaves. The data has to be scrutinized. By the auditors. And the department. Has to fail to assess. Then the taxpayer. Can rely on that audit. That's paragraph 59. Of the Lowe's decision. The evidence here. In the light most favorable. To the non-moving party. Reveals that the Illinois. Department of Revenue. Conducted 2 audits. 1 of them for a period. Preceding the damages. Period here. The auditors did not. Scrutinize the data. In fact, Best Buy admits. That the issue was never. Raised in their audits. The auditors did not. Discover Best Buy's practice. And when they went back. To follow up. And did look at the data. They assessed Best Buy. So you have a very different. Factual situation here. Because the facts show. That Best Buy did not submit. The same data. That Lowe's submitted. In the audit. And the facts show. That the auditors. Clearly did not look at it. In fact, there's admissions. By Best Buy. To that effect. That we've cited. On page 38. Of our opening brief. And page 9. Of our reply brief. And there's also the test. There's also documentary evidence. Showing that the auditors. Did not look at this issue. Preceding the appliance. Audit in 2015. So for that. That pre-compliance alert period. The audit is very different. And secondarily. For the pre-compliance alert period. The investigation is very different. Because what you have. In Best Buy. Is you have these assumptions. And they're prevalent throughout. Best Buy's analysis. Of the construction contractor exemption. You see these assumptions. That were a construction contractor. In assumptions. That were permanently installed. So they essentially. Assume the result. And when they were told. They were wrong. In the compliance alert. They never went back. To look at it again. So these facts. Distinguish this case from Lowe's. And suggest that this case. Should go back. And be tried to a. To a fact finder. On the question of CNTR. There are several other. There are several other issues. In the appeal. But I realize that. My opening 10 minutes. Has reached its conclusion. Thank you. Justice Ellis. Do you have any questions? Thank you. Justice House. Can you. Can you hear me counsel? Yes, I can.  Thanks. Thank you. Mr Burks. Thank you for your presentation. Good morning. Good morning. Just a couple questions. The pre-compliance letter periods. So you have argued. That the four factors. I think you refer to it. As from Lowe's. Are not met here. But even if that's true. Is there any affirmative evidence. That you've put into the record. That in fact. That does establish. The CNTR requirement. I mean as the. As the non moving on summary judgment. If this is the sort of. A summary judgment argument. Where the defendant says there's no proof. Then you have an obligation. Don't you to put forward something. Right. Yes, your honor. But the standard here. For knowingly. Is recklessness. Is did they fail to inquire. Did they fail to make prudent inquiry. Did they fail to analyze information. That was available to them. So when we say that. The evidence in the record. Shows that they fail to do that. We're looking at the. We're looking at the. At the analysis that they did. I think in the my pillow case. The court says. Look you know. Whether somebody did a reasonable. Whether somebody acted recklessly. Depends on what they did to figure it out. So when we look at. What they did to figure it out. We think it shows. There's enough evidence. That a fact finder. Could show that it was reckless. Because of the assumptions. That they went into it with. Because of the failure. To re-examine. In light of the compliance alert. Because of the failure. To disclose overtly. Knowing that the department. Was looking at the issue. And I would just. And I would sort of suggest. Well how they reacted. To the compliance letter. Is after 2015 right. I'm talking about before. Before the compliance letter. Are you. Am I hearing you basically. Say that the absence of proof. Is proof of absence. Is that really what you're saying here. I wouldn't. I would not put it that way. What I would say is. I would put it as garbage in. Garbage out. I would say that. If you have a compliance department. Whose goal might be. To find tax savings. To take aggressive tax positions. Because for a large. Multi-state retailer. Like Best Buy. Tax savings across the board. Are is real money. So if. And so if you are designed. To find. To take aggressive tax positions. And so you tell. Your consultants. Or you tell your tax compliance people. Hey look. You know. We could. We could. You know. We've got to compete with Home Depot. We've got to. Now I don't have. I'm not saying that. These are quotes or anything. I'm not saying. There's evidence in the record. Is anyone saying this. I'm saying that. If you look at the evidence. You can see. An outcome driven analysis. In order to maintain. A competitive parity. With their. With their competitors. Okay. But I think you understand. My point here. I mean they're coming in. Best Buy is coming in. Saying you have to prove it. And there's nothing in the record. And I'm hearing you. Talk about what happened. After 2015. And obviously. We're talking about. The pre-compliance letter time. Garbage in. Garbage out.  You know. Recklessness is. We did something reckless. Are you just saying. The fact that they took. The position at all. Was proof of. Of Sienter. I think. I think it is. Some evidence of Sienter. Because if you look at the regulation. I don't think that. A common sense.  I think most people. Are like Rich Lindblom. If they look at the regulation. They say. Does somebody who installs. A dishwasher. And our tax laws. Are supposed to be. Common sense tax laws. You're supposed to look at them. That's in the Hartney case. They should be consistent. With common sense. So I think it is some evidence. That they went. And looked at our. This regulation. And said. You know what. Dishwashers and microwaves. We might. We might. We might be contractors. When we did that. That's part of it. And then the second part of it. Is the analysis. The absence of the analysis. The absence of any. Any really. And the conclusions. That they drew. The single. That a sales receipt. Is a construction contract. If it has installation. And and the sale. On the same receipt. That becomes. But that's all. Kind of one thing right. You're saying. That the position. That they took. Was itself reckless. But do you have. Besides that. Is there anything. In the record. That suggests. That they you know. For example. Didn't provide everything. To the auditor. Or they said. Boy we really got away. With one there didn't we. Now I know. That's a little too. On the nose. But anything. Of that nature. That would suggest. We know. We might be wrong. But no one's catching us. Something along those lines. Anything like that. There's not affirmative. Evidence along those lines. But I would say that. I would refer you back. To the legal standard. Which is the failure. To make prudent inquiry. And inquire further. When information is in front of you. So so burying your head. In the sand. And not saying anything. Is also a knowing violation. Okay okay. Thank you. Thank you counsel. This is in time. Do you have any questions? So focusing again. On that pre-compliance. Alert period. Before that was issued. Didn't the Illinois department. Of revenue allow. Retailers to rely. On that contractor exemption. And just collected. The use tax. And didn't Angela Freitag. Say as much in her deposition. So and and how. And do you see that. As relevant at all. To the Sientar. Pre-compliance alert period. So I would say that. If you look. The evidence is disputed. On the on whether the department. Permitted the type of behavior. That Best Buy engaged in this case. And I would say that the. That that a fact finder. Is likely to find that they did not. Because the because the. Testimony of Jerry. Geraldine Gordon. Who was the chief tax. Compliance officer or lawyer. At the Department of Revenue. For 30 years. Is fairly clear. That she understood. In the department's position. Was that these sales. Were retail sales. Now the testimony of Miss Freitag. Is is disputed. I mean it's disputed. By her herself. Where where she testifies. To to to different things. From different leading questions. But I would say that. In the record itself. That the testimony of. Miss Gordon creates. At the least a disputed. A disputed question of fact. But in fact the department's. Position has been consistent. That that these that these. Sellers are retailers. They are not construction contractors. Even before even before. The even before the compliance. Why didn't the department collect. The tax it says that now. After the pre compliance. Period was old. So with these. Multi-state retailers. These are enormous audits. And this is truly. The tail wagging the dog. For a multi-million dollar. Retailer like Best Buy. That sells so many products. And and we we did have testimony. I want to make sure that. I'm not misrepresenting record. But that auditors. Don't look at every issue. In every audit. They just don't have the time. They don't have the resources. They identify issues. And then they look at them. And for something like this. Which obviously it affects. Richard Lindblom. And Bud Lindblom a lot. But but the amount of money. It issued for the state. Is not that significant. So the auditors. So it was only the. Independents who followed the law. Because the risk of an audit. To them was great. But for the for these. Multi-state retailers. They found an opportunity. And the auditors. You know I'm not saying. That no auditor ever looked at it. But in the two audits of Best Buy. Which are in the record. We know that the auditors. Did not look at the issue. Because there's no. There's no evidence in the record. That they did. And there's there's in fact. The documentary evidence. From the auditor. For the 2011 through 2013 period. Saying hey my boss told me. To come back. And look at this issue. Which I didn't look at. In the last audit. So so auditors. Don't look at everything. This was not an issue. That was on the department's radar. Until Richard and. Bud Lindblom brought it to them. And then they they began. To investigate it. And and found non-compliance. And in fact the department. Looked at the regulation in 2015. And they said we don't need. To change the regulation. The regulation is clear. There's just non-compliance. Going out there. And that was that was. Miss Gordon's testimony. She worked on the compliance alert. And she was the chief sales tax. Lawyer there for 30 years. And she said yeah. I was asked to review the regulation. And see if it needed to be updated. And I looked at it. We looked at it. It didn't need to be updated. We just needed compliance. And backing up a bit. Can you explain to me. What is. What is it that makes. What exactly is a construction. Contractor. What is it about the contract. That makes it a construction. Contract or not. Okay, I mean, I think that. This court's decision in that. In the Best Buy case. The tax Best Buy case. Was really good on this. In the sense that. Look, a construction contractor. Is someone who holds themselves out. As providing the service. Of construction. And then in the course of doing that. I'm going to build you a house. They have to incorporate materials into that. So if you think of it. From just that paradigmatic example. Of someone who comes to you and says. I'm going to. I'm going to build you a house. I'm going to add an addition for you. And then you say, okay. What do you need to do that? And those materials become. Incorporated into the addition. That's a construction contractor. If you walk into a store. And say, I'd like to purchase that item. Over the counter. And can you install it? That's a retailer. And I think it is a common sense distinction. Which. Rich and Bud Lindblom. And the other independent retailers. Were fully aware of. Rich would never say. He was a construction contractor. Even though he's installed. Thousands of dishwashers. Thanks. Okay, thank you. Mr Burks. Although the language of the. Regulation didn't change. For previous to 2015. Doesn't the fact that. A compliance alert was necessary at all. Indicate that there was some question. Or gray area. About how this was to be handled. The fact that they had the issue. You know, she looked at it. Said, I see what the language is. But there's some question. About how we interpret this. Therefore, we're going to. Let everybody know. This is how it should be interpreted. Therefore. Going to the pre compliance period. I think they're. Scientists. No, I think that sort of. In first too much. I think what the department said. Is that we have found a problem. Which is to say that. It's prevalent in this industry. That people are not following the law. Why it's prevalent in this industry. We've looked at the regulation. We think we've been consistent. We think we've been clear. But. Taxpayers have come to us. And they said our competitors. The playing field isn't level. Because certain competitors. All of them, multi-state. You know, big box retailers. Are doing it different. Than all of these local. Independents are doing it. And so we have non-compliance. Now we could. Address this in multiple ways. They have a lot of tools. In their tool bag, right? We could go audit. Each one of them individually. And focus on this particular issue. But that's not a huge revenue source. For the Department of Revenue. So let's do this. In a broad, across the board way. And tell all these folks. A shot across the bow. From here on out. Do it this way. And solve the problem that way. But it doesn't imply. Or suggest. That anybody had any. That they necessarily had. A good faith reason. For doing it wrong. Other than that. It was to their economic advantage. To do it wrong. And they thought. They could get away with it. But thank you. I have no further questions. Any further questions. Justice Ellis? Justice Ventai? Nope. Thank you. Okay. All right. Very well then. Thank you. Ms. McCutcheon. You may proceed. When you're ready. Thank you. May it please the court. I want to touch on a couple issues. That were raised in the questioning.  Before I get into my general presentation. First as to Justice Ventai's point. Yes. There were several GILs. And PLRs. That were generated. By the Department of Revenue. Over the years. That specifically stated. That a retailer. Could act as a contractor. When installing dishwashers. And over the range microwaves. You can find them at C1772. Which was written by Ms. Gordon. Who admitted during her deposition. That this issue had always been. Consistently confusing to taxpayers in Illinois. And in fact. There's plenty of evidence in the record. That it was confusing within the department itself. Which is what led to the 2015 compliance alert. As Justice House has aptly recognized. That particular PLR. Ms. Gordon states. That the taxpayer must physically incorporate. Into reality a microwave. And it must meet two tests. The microwave must be physically incorporated. Into the real estate. Permanently attached to the real estate. And that it's bolted to the cabinetry. And that it must be hardwired. That's exactly what was happening here. And that's exactly the type of guidance. That Best Buy was following. The record is replete with evidence. That Best Buy had a routinized process. For reviewing Illinois law. And in fact the law of all 50 states. On this issue of installed appliances. It is an entire misstatement of the record. To say that the presumptions. That were included in KPMG's separate analysis. Which agreed with Best Buy's internal analysis. Was set up with false premises. There's no evidence of that. In fact the evidence in the case. That it was KPMG that put in those presumptions. So the court can put that aside. The trial court here at page 15 of its opinion. Recounted in great detail. And throughout its 40 page well-reasoned opinion. That Best Buy analyzed this issue. Both before the compliance alert. In a routinized manner. Using the best software. And the best people available. That it used outside consultants. In KPMG and otherwise. To look at it as well. And that advice confirmed. What Best Buy had arrived at internally. And that after the compliance alert was issued. Best Buy looked at it again. Again Miss Yonke's testimony. And I encourage you to look carefully. At Miss Yonke and Miss Nolan's testimony. In this case it is clear. That they looked at this. And arrived at the conclusions they did. Post a client alert. What did Best Buy do? Best Buy looked at it again. Again at page 15 you'll see this. And throughout the opinion of the circuit court. And decided that it disagreed. With the Department of Revenue's new position. Which was in fact a new position. As the circuit court arrived at. So they paid the ROT under protest. Okay unlike Lowe's. Or not like Lowe's at all. They paid that money under protest. And initiated a protest monies act action. Which is its fundamental statutory right. Under Illinois law. And it prosecuted that case. All the way to the end. Until it got to the Supreme Court. And was denied review. Although it lost the case. And was ultimately found to have made a mistake. A mistake is not a basis. For a false claims act case. There has to be fraud. There has to be reckless conduct. There has to be a head in the sand approach. Certainly litigating a case. As far as it could possibly go. Within the state of Illinois. Is not a head in the sand approach. To dealing with this issue. The case law that relators rely upon. Repeatedly to try to establish. That Best Buy was reckless. Is the case law that Best Buy created itself. By litigating the issue. In fact prior to that. There was none. None. All there was. Was information that could be gleaned. From the PLRs and the GILs. So under both Relax the Back. Which this court issued years ago. And under excuse me. Business Furniture. This case falls squarely. Within that context. In which you have a gray area of the law. Which Best Buy undertook. A limited duty to review. Although they reviewed it extensively. With the help of outside counsel. And arrived simply at the wrong decision. That is not fraud. But thankfully the court. Doesn't have to wade into any. Of the scientific issues that we have. Because there's two other issues. That are controlling. And dispositive of the case. The most simplest way. To get to dispose of the case here. Is really on the pre-suit. Mandatory requirements of IFCA. Under those requirements. The plaintiff is required to submit. The complaint that he puts together. Under seal to the state of Illinois. And submit a statement of material facts. That lays out all the information. That that relator knows about. In this case Best Buy. Relators. Undisputably did neither. In this case. They try to say that it should relate. Back to the original filing. But there is nothing the same. About Best Buy's case. In the cases of Sears. Lowe's and Home Depot. Such that it could possibly be considered. The same sort of case. Or related to the same. Fundamental fraud. In fact it's an entirely new defendant. With entirely new facts. Time periods. Auditors that were involved. Products that were involved. There certainly is no continuity. Between those. And so the Supreme Court. Of the United States. Has held that it is within. The sound discretion. Of the trial court. To issue a sanction of dismissal. In cases in which. The relator fails to follow. These pre-suit requirements. Again there's no dispute. That they fail to do so. The judge. Judge Curry. In this case. Dismissed the relator's case. At the outset of his opinion. As a sanction. Based on their failure. To comply with the pre-suit requirements. That is reviewed under. An abusive discretion standard. And under abusive discretion standard. This court has to decide. That no reasonable person. Could have arrived. At that particular conclusion. Best Buy submits. That there's no way. That this panel. Your honors could arrive. At that conclusion. It should be upheld. There's mixed case law. On this issue. In the federal courts. As to whether or not. A case should. Or shouldn't be dismissed. As a result of a violation. But the fact. That there's mixed case law. Doesn't mean that. Judge Curry got it wrong. Or that no reasonable person. Could have arrived at that decision. In fact it's the opposite. Other courts have. And in this situation you have. All of the Lujan factors. That that. My my opponent says. That the court didn't pay attention to. And what's the most important. It's harm to the government. The government was robbed. Of its opportunity to investigate. And review these claims. Which were by the way. Under specific audit. As the Best Buy. That is quite different than Lowe's. It's quite different from. From Home Depot. Which are also sued. It was under specific audit. And had it been given the chance. To do that investigation. It would have realized that. But it was robbed of that opportunity. That is the harm. To the government in this case. But what's more important. Is the bad faith. This cannot be lost on the court. When it comes to this issue. When plaintiffs filed. Their amended complaint. That added Best Buy. For the very first time to this case. They fundamentally misrepresented. That they had filed. Those procedural requirements. And you can find that misrepresentation. At C1753 to 1754. The plaintiffs have firmly stated. That they had done that. That was untrue. Did it? Moving on. As to the public disclosure bar. This court has. Approved of the. The Seventh Circuit's approach. To what is a public disclosure. In terms of having disclosed the fraud. To the government entities. That are in charge. In charge. Of reviewing the issue at hand. In this case. The Department of Revenue. There is no question. And is undisputed. That Best Buy repeatedly. Disclosed its tax practices. With regard to installed appliances. To IDOR. In 2009. In 2014. And again in 2015. The relators didn't sue. Based on zero information. Which they admitted under oath. They had zero information. About Best Buy. When they sued. They didn't sue until 2016. Many, many months. Before all this was disclosed. There's no doubt. That that audit. And that investigation. That the IDOR undertook. Was a public disclosure. Under Seventh Circuit authority. And I would remind this court. And in particular Justice House. You wrote an opinion. Years ago. In a case known. Excuse me. As. I'll find it.  Musateri versus People's Gas. And in that case. You wrote favorably. About the Glasser Standard. Which is. Again. In the Seventh Circuit. If there is a disclosure. To the government. That is in charge of investigating. These claims. And the government. Is in fact investigating. These claims. That is a public disclosure. Again. This court. Cited. Glaser. And its progeny. Again favorably. In another case. Later on. Which was a Rule 23 order. It is clear. From the jurisprudence. In the first. First district. That they look to the Seventh Circuit. Trying to decide these issues. Right. And the Seventh Circuit. Has continually held. That where there is a disclosure. Whether confidential or not. To the government entity. That's in charge of the investigation. And it is actively investigating. That qualifies as a public disclosure. So there was a public disclosure. Contrary to what my opponent insists. And importantly. They do not challenge on appeal. That they do not qualify. As an original source. Of the of the fraud. That argument has been waived. So if this court decides. That a tax audit. Is a public disclosure. And by the way. All tax audits are confidential. This legislature. Is presumed to know that. When it writes its statutes. And it included. Audit and investigation. In the statute specifically. And when it did so. It must know. That tax claims. Which are subject. To false claims accident. Act actions in Illinois. Are all confidential. So it makes sense. That that they could be. A public disclosure in Illinois. To hold otherwise. Your honors would write. That right right audits. And investigations out of the statute. In any case that involves taxes. And this state. Is filled with cases. The false claims that cases. Related to taxes. As you well know. It's in the minority. There's only nine states. In the union that allow it. And importantly. The federal courts don't allow it. So when you see these federal cases. That my opponent cites to. Let's say that a confidential tax audit. Cannot be a public disclosure. They're an apposite. Because that issue doesn't come up. In the federal courts. And in those cases. That basically say disclosure alone. To the government isn't enough. And I agree with that. So does the seventh circuit. But it's not the case here. The case here is. There was an active investigation. And an active audit of Best Buy. At the time. So you should find in favor. First on the procedural failings. At the outset. That's easy. That's that's an abusive. Discretion standard. Two you can find in Best Buy's favor. On the issue of public disclosure. Again I posit that. The issue has already been decided. By this court. And third the sanitary issue. Doesn't get off the ground. We've already talked about that. At length. Thank you your honors. All right. Thank you. Justice Ellis. Thank you Justice House. Any questions? I'm sorry. Yeah no no. You're fine. I just have a couple questions. Thank you Mr McCutcheon. And good morning. Want to take you back to. The time of the compliance letter. You said. I believe just talking now. You said we. We paid the. The Best Buy that is paid the.  Penalty the. The tax under protest. And then sued.  Am I correct that. It was only after. The state initiated. Another audit against you. That this even came to pass. There was the compliance letter in June. But didn't they. Undertake a special audit. In I think August. Maybe it was September of 2015. Your honor. So there was an audit that was. Ongoing prior to the issuance. Of the compliance alert. In which Best Buy's treatment. Like it had been for years. Of these products. Was disclosed to the department. It got a clean audit. On that issue there. But then. The department asked. Subsequently to the close. Of that audit in early 2015. What is what is happening. With these installed appliances. Can you clarify how you treat it. And Best Buy was honest. We take the position. That we're acting as a contractor. And that use tax is applied. Not ROT. So that investigation began. In May of 2015. Before the compliance alert issued. The formal special audit was initiated. You're correct. Your honor. In August. And a memo was provided. To Best Buy by the IDOR. In October of 2015. Stating that its conclusion. Was it was taxing incorrectly. And from that point forward. The issue went through the. Through the appeals process. Within the department of revenue. And Best Buy lost. In the appeals process. And it was after that. In early 2016. Again before the relator sued. That they initiated. The protest monies act case. And by that time. Had hired my law firm. To represent it in that. In that proceeding. To flesh out what is the truth here. What does the law really require. Because again there. There was no binding guidance. From this court or any other. As to how these these. These products should be treated. Either use tax or ROT. Best Buy established that. In the law for the first time. And that wasn't set in law. Until 2020. Okay. On the question of the. Public information bar. It has different terms. But you know what I'm talking about. So the. I think you even acknowledge. The weight of federal authority. Is that. Mere confidential. Disclosure to the government. Does not. Maybe not in the 7th circuit. But outside the 7th circuit. Many courts have said. That mere confidential. Disclosure of the government. Is not public. And I think the reasoning has been. You know when when. If it's beyond that. If it's beyond confidential information. If it's out there. And known to people. Then you're really not blowing any whistle. Because it's already been blown. But as long as it's not known publicly. Beyond some confidential government. You still want to be incentivizing people. To find these problems. And and perhaps even nudging the government. That might sometimes drag its feet. I'd like you to address that. And and I guess I have a second question. Is is your. Did I hear you say your principal distinction. Between those cases. Which is really just. The federal false claims act. Versus the Illinois version. Is is a linguistic one. That the federal false claim act. Does not discuss. Does not mention audits. Whereas the false claims act. In Illinois does. Did I hear you say that? No let me start with that question first. Okay I'm sorry. I asked you two questions at the same time. I try not to do that but. Yeah so no the federal act. Does include audits and investigations. By the government. The distinction is. Under federal law. You cannot bring a tax. False claims act case. That has to be dealt with. Through the tax courts. So that the federal courts. Don't don't deal with confidential audits. In the tax context whatsoever. The difference is Illinois courts do. And the illiquid in the legislature. Is presumed to know that. That that tax cases are subject. To Illinois false claims act cases. And because of that. When they wrote the statute. It necessarily means. That audits and investigations. In the tax context. Which are always confidential. Must qualify as public disclosures. To answer your first question. To hold otherwise. Writes it out. Writes the language right out of it. Right of the statute. As it applies to tax cases. And that's not fair. I mean some defendants. Can rely on audits. But the people that are. Accused of tax violations cannot. That can't be the law. I think to answer you. The first question I think was about. Was about those federal cases. It's sort of the general reasoning behind them. Yeah the general reasoning. Behind them I think is sound. And the seventh circuit. Has it has acknowledged. That some of that general reasoning is sound. But the distinction there again is. The seventh circuit is. Holding on this is nuanced. And it's nuanced in a way. That makes sense in Illinois. If there's a general disclosure. Of information to the government. That does not qualify as a public disclosure. I'll agree with you on that. Confidential or not. That's why the government. Disclosure bar was written out of the statute. And now the public disclosure bar applies. So the idea that. We're asking for reinstatement. Of the government's disclosure bar. Is just is a non-starter we're not. The distinction in the seventh circuit. And it's a smart one. Is that a disclosure isn't enough. It has to be to the management. Of the government. In this case IDOR. Which is responsible for reviewing. The exact type of fraud. That's at issue here. And IDOR does review. Best bias audits. And information and tax treatment. For fraud and negligence. Over and over again. And every tax period. That it submits. And I would remind you. Never found any negligence. Or fraud whatsoever. But the distinction. Is that managerial body. Has the information. And the seventh circuit. Has said public means. Disclosed within the act. And the government. That's charged with it. Is acting for the public at large. And if it's aware of the fraud. Then there's no reason. To reward a whistleblower. With a 30 percent bounty. For bringing in information. That's redundant. But the key thing. And the difference I think. Between those other cases. In the seventh circuit. Is that it takes a step further. Saying disclosure alone isn't enough. But an active investigation. Right which is what we have here. In the audit. An active investigation. That discloses it. Is sufficient to qualify. As a public disclosure. And that makes sense. Under Illinois law. Okay. But again. I would remind you. You don't have to go that far. You can. You can look at the pre-filing. Neglect in the pre-filing. You know misrepresentations. To decide this case. On an abusive discretion standard. Well so on that point. And then I will be. I will be done. I promise but. So in the cases. Where an amendment. To the key tam action. Adds new claims. You will see times. Where the courts will say. Yeah we you know. You have to go back through the ceiling. But talk about. So so here. The the. A new defendant was unquestionably added. And when you add a new defendant. Of course there's different facts. Of course it's a different store. It's you know. There might even be different time periods. But the general theory. The the arguments. The claims were really. Identical to Sears. And and the others. Weren't they? I mean it was the exact same thing. It's your you're. Selling these things at retail. But then installing them. And calling yourselves a contractor. I mean or or. Do you disagree with that? Well I disagree in the sense. That the theory. The theory of liability. Pertains to taxation. Of installed appliances. These entities are separate entities. In fact they're competitors. They act differently. They have different internal employees. There's different auditors. Involved in their and how they. When they're in front of the department. But it's the same question right? They're they're answering. Yes of course there's differences. Different companies. Different people. Maybe different time periods. But it's the exact same controversy right? It is yes. The same idea. But if you if you take a look at. The cases that deal with this. And again I think they're consistent. When it comes down to it. And looking at when there's new. Defendants added to a case. You have to go back through the process. And if you don't. Dismissal on an abusive. Discretion standard is appropriate. And the reason for that is. Think about this. The relators unquestionably. Would have had to go through. This process of filing under seal. And providing the government. With a statement of material facts. If they had filed a new lawsuit. Against Best Buy. Which is what they should have done. They didn't do that. And I would posit. That the reason they didn't do that. Is because they admitted. In this case under oath. That they had no information. About Best Buy. They admitted repeatedly. That they didn't know. Anything about Best Buy. Until January of 2016. When they had sued the others. Back in 2015. And even that was speculation. So they couldn't provide. The government with a statement. Of material facts. And they undermined. The entire system. I posit intentionally. In order to get to that bounty. You can't allow. Plaintiffs to smuggle claims. Past the government. And to hold otherwise. In this case would be. Would be the effect of that. If you can file one complaint. That has general allegations of fraud. Against you know. Defendants 1, 2 and 3. And the government looks at it. And decides not to intervene. For whatever reason. A claimant can then go out. And smuggle in more viable claims. More interesting claims. Against other defendants. And enjoy that. Still enjoy that 30% bounty. And rob the government. Of the opportunity to review it. And take those cases itself. But it wouldn't. Permanently rob the government. Would it? I mean the government. Could still intervene in the case. Yeah it theoretically. Could intervene in the case. But it would have to make. A good cause showing. For the reason why. Prior and the reason. That the statute. Is set up the way it is. Is to allow it to do. A full investigation. And let's just stick. To the facts of this case. I'm not. I don't you know. Best Buy does not need. A broad ruling from this court. I think the court. Could rule narrowly. That in this case. Where the plaintiffs admitted. They had no material evidence. Regarding Best Buy's behavior. And its taxation. To the day that I took. The deposition of the relators. To that day. They had no idea. How Best Buy tax. Installed appliances. I mean this is not. A real whistleblower case. Your honor. It's not. It is not a case. In which there was inside information. From an employee of Best Buy. That led to a fraud. It's quite the opposite. You had a competitor. In the field. That claims. Although he couldn't. Fully remember. During his deposition. That he was just told. You know. Secondhand from. From customers. That that may be the case. At Best Buy. And that he might have. Looked at the website. Those are all public. Informations right. Those are all things. That are don't qualify. As whistleblowers. So to the extent. That this court. You know would. Would want to help a. Relator in a situation like this. This isn't the case to do it. I mean they affirmatively. Misrepresented. That they had done. Exactly what they didn't. And under the Lujan factors. That way is in favor. Of affirming. The circuit court's dismissal. Of the case. Thank you counsel. I appreciate it. Thank you Justice House. Thank you. Thank you. Justice Ventana. Do you have any questions? Yes. You talked about. How the Lindblom's. Didn't file. It's amended complaint. Adding Best Buy. As a defendant. Under seal. What really is the significance. Of that if the government. Knew all along. That they were. Auditing Best Buy. They were. Looking at the tax. Practices. Like how does that hurt. The government. Or the public. Or or your client. Well, well, your honor. I think that ties back to the fact. That this isn't a real whistleblower case. I mean the government was aware. Of what was going on with. With Best Buy's tax treatment. Of installed appliances. Going back to 2009. There's admissions in the record. About that. Again in 2014. The information was disclosed. And reviewed and Best Buy. Passed those audits. As this court held in the Lowe's case. The audits were. Were prima facie proof. Of the proper amount of taxes paid. So I mean. We don't even have to get. To the to the procedural issues. And the pre filing procedural issues. Just on that fact alone. I think that's that's significant. But in the context. Of the pre filing procedures. The the attorney general. Is the one that has to be notified. Of the fraud claims. Which then in turn would go. And do an investigation. And it's the Department of Revenue. That has the information right. And so the disclosure. Is to help the attorney general. Understand what the claims are. So we can then go and see. Do we think that there's already. An investigation underway. That is taking care of this issue. Right the Department of Revenue. Is set up to do just this. To review these types of claims. Make a determination of the. Propriety of the of the tax treatment. And then issue penalties. Or try to recover money. If it thinks it was wrong. That's exactly what happened here. And had they followed the rules. The Department of the AG's office. Would have gone to the Department of Revenue. And asked what's going on with Best Buy. And the response would have been. We already audited this issue. And we found that they acted in good faith. They made a mistake. But they acted in good faith. I mean that's exactly what all the. Testimony in this case reveals. Is that while there was a mistake made. Post compliance alert. They decided that. There was no penalties. There was no fraud. There was no ill will. There was no intent to deceive. And so with that armed with that. Information the Attorney General. Would have dismissed this case outright. No doubt it would have intervened. And dismissed it. But it was robbed of that opportunity. And so here we are having wasted. All all of the judicial resources. That we have over the life of this case. Which is approaching 10 years. When it should have never. Gotten off the ground. Going back to the public disclosure bar. So the Department of Revenue. Knew about Best Buy's practice all along. But this plaintiff. Lindblom claims he didn't. Is that right? That's right. So the purpose of the public disclosure bar. Isn't that for people like. The Lindblom's who. Don't know about the practice. Because I don't know. It's either it's to come forward. If there's something that's askew about. The way Best Buy is paying its taxes. Right. Your Honor. The point of the whistleblower act. To the false claims act. Is for insiders people. With real material information. About a wrong right of fraud. To disclose it to the government. So that the government can either. Choose to pursue the action itself. Or allow the relator to do it. In a key tam suit. This case is different. And the reason why I say. It's not a real whistleblower case. Is that the Lindblom's weren't insiders. Then they had no inside information. And in fact all of the information. As you just said was previously. Disclosed to the Department of Revenue. So this case should have never. Gotten off the ground. And when it comes to public disclosure. It's exactly what you just. You just said that the Department. Of the government. The Department of Revenue. It's charged with reviewing this. Was well aware of Best Buy's tax practices. And affirmed them in the audits. And then when it changed its opinion. About how these products. Should be taxed when installed. It reviewed it again. Long before the relator sued. Months. Won't be over a year before they sued. It's stale information at best. But when I testified them. Or when I when I examine them. And deposition they admitted. At the day of back in 2020. That they still had no idea. How Best Buy tax. It's it's it's products. I mean their their their case. Is fundamentally fraught. Flawed in that in that respect. Thank you counsel. Thank you. Miss McCutcheon. This case came on to us. As a appeal from summary judgment. And during when we review. These cases for summary judgment. We do a de novo review. Are you advocating that review? The judge is finding on the legal issues. Under the abuse of discretion standard. Your Honor, the only issue that needs. That should be reviewed. Under abuse of discretion. Is that related to the pre-suit? Procedures under IFCA. Because that the judge ruled. Was a sanction. Any any order as a. Sanction dismissal of the case. And so the legal issues. That go behind it. A whether it a complaint. Or an amended complaint. You know should count. For filing under seal. That is a question to review de novo. But the question of whether. The trial court judge. Curry got it right. And his sanction is reviewed. Under an abuse of discretion standard. Plaintiffs concede that. In their own breeze. That's the mandate from Illinois courts. And that's the mandate from the. Supreme Court of the United States as well. Thank you. Justice Ellis just then time. Any further questions. Just just a brief follow up. So so you would analogize this. To the denial of leave to amend. It's it's a sanction. It's not, but it's, but it's. It's just completely within the. Discretion of the of the trial court. Absolutely, Your Honor. And what's the case you cite for that? Well, the the the discretion is. Under the under the no reasonable. Person standard, I can give it to you here inside. Was part of the same order. Granting summary judgment. Yeah, the court raised it. As a sanction, but there's a case called. Peterson. The Rahava Red Hava. And it's at 313 Illinois app. 3rd number one. And it was decided in 2000. That's not a controversial point. I mean, the idea that a court would. Issue a sanction and dismiss the case. And have it reviewed under an abusive. Discretion has been long. Been the law in Illinois. And I would encourage you to go back and read. Judge Curry's well, reasoned opinion on this. I, I, I've been an appellate lawyer now for 24 years. And I've been practicing in Cook County for just as long. And I, and I've never seen an opinion quite like this 1 and that from beginning to end. Covers all the bases and is as thorough as they come. Yeah, yeah. All right, any other questions? Not for the time being, but I do have a question for you. Justice house. All right. Mr. Berks, you may take a little time for rebuttal. Thank you. Your honor. Let's see if I can, I can limit myself to a few points on rebuttal. Starting on the, on the center issue. I just want to point out that opposing council said that they paid under protest after they were audited and assessed and then litigated. That was for the, the audit covered the 2012 to essentially an 18 month period from mid 2012 to 2013 from 2013, all the way through to 2020. They did not pay the ROT. They did not charge it. They did not collect it. They did not pay it for the full period of time that they were litigating the case. They were continuing with the competitive advantage over the independence. They were continuing with the parity with their multi-state competitors. Mr. Mr. McCutcheon indicates that because this was a gray area of the law. They should be given sort of a thumb on the scale. They got it wrong. Anybody could have gotten it wrong. I think that we should be that whether this was a gray area of the law should be, should be presented to a fact finder because he says there's no case law out there, but that's because the regulation was very clear. The statute was clear. No reasonable taxpayer who sells appliances would believe that they were a construction contractor based on this regulation. So I think he can present that there were some stray PLRs that Best Buy wants to interpret as supporting them, which we think that these GILs, which expressly are not the position of the department, do not state the law, but rather direct the taxpayers to look at the actual regulations, are not sufficient to get them over the hump. So we would like to present that as well as questions about their motivation. They say they re-examine the law post-compliance alert. I cited to you places in the record where we can see they're not examining the law, but rather checking with their competitors and reaching a conclusion based on the competitive consequences. That's a dispute of fact about their, about what they did post-compliance alert and what their motivation was. So I think for the post-compliance alert period, we have disputes of fact, and we know it's undisputed that they did not collect. They did not charge. They did not follow the compliance alert, just like Lowe's. As to the three-factor test, the question of law is whether or not, I'm sorry, with respect to the pre-filing procedures, the question of law is whether the Lindbloms were required to do the pre-filing procedures for the amended complaint. That's a question of law. The vast majority of cases, and I think the briefing shows this, hold that they were not, even when a new defendant is added. As long as the legal theory is the same, as long as you're not bringing new claims, a new count that has different facts related to it, that you do not have to follow the pre-filing procedures because the government has already seen it. If the court were to find that the exception applies here, that the same claim against was so different because we named Best Buy, that the government needed notice once again, then the three-factor test applies. If the court had applied the three-factor test, which is harm to the government, severity of the violations, and bad faith by the filer, then its application of that test would have been reviewed for an abuse of discretion. But if it failed to apply the test, if, as Judge Curry said, the law of this state must be enforced and applied it as a black letter rule, then no, it's not an abuse of discretion. The failure to exercise discretion is an abuse of discretion. He did not apply the proper test. And then third, if he had applied the proper test, it clearly weighs in favor of the Lindbloms here. Dismissal was an excessive punishment for failing to comply with the pre-filing procedures for an amended complaint, which repeated all of the same allegations in the original complaint, but added only a single defendant. That was not done in bad faith. We served the government with every one of our filings. That was clearly not bad faith. We weren't hiding anything from the government. Mr. McCutcheon's theory that the left hand of the AG's office didn't have the phone number of the right hand of the Department of Revenue, so they couldn't have found out that Best Buy was under audit, it just doesn't hold water. The Illinois Attorney General, the government could have intervened at any time, could have dismissed this case out of hand. They could have done all of that, and they were fully aware of everything. So there was no bad faith. There was no harm to the government to suggest that dismissal was the appropriate remedy for what was arguably, it wasn't even a violation, but if you were to find it was a violation, it would have been an abuse of discretion. As to the public disclosure bar, this is a plain language argument. Honestly, the word public means public. Mr. McCutcheon argues, well, the word public could mean confidential plus investigation, but the word public doesn't mean confidential plus investigation. You have to look at the plain language of the statute. You have to start there, and this court has repeatedly said that a disclosure must be public to be a public disclosure. It has said that public means the plain meaning of the word public. It has described what the plain meaning of public is, which is to the world at large, open, and that is Illinois law. That's not Seventh Circuit law. That is all in the Target case, in the prior Best Buy case, the case that this is the second appeal, and in the Trammell case from the second district. Those are the plain language arguments, and the policy arguments support the plain language in the sense that the government has a lot of information. Sometimes the government might be in cahoots. Sometimes the government might be negligent. It might not be looking at the information that it should be looking at. It might not have the resources or think that it's worth its time to do it, but if there's a false claim out there and an individual finds out about it, then if it's not public, then they're allowed to bring a claim on it, and this was not public. The idea that because it's an audit, there's a different rule that applies, but there are many, many public audits. I think in our brief, we cited the Auditor General's website, which lists public audits. The fact that tax audits are confidential just means that tax audits are not public disclosures. It doesn't nullify the statute. Many audits are public. Tax audits are not, so they cannot be public disclosures, and I think this leads me into this sort of maybe larger issue that's not really presented by this appeal, but Mr. McCutcheon's view that the relators are not really relators because they're not insiders and that the case is not really a whistleblower case. That is a legal issue that Best Buy and the other defendants have lost multiple times because you don't have to be an insider to be a key TAM plaintiff. You can do an investigation of public information and find information and tell the government about it, and the Illinois False Claims Act allows you, permits you, and encourages you to bring such a claim. The leading case on this is Lemire's, which is a Seventh Circuit case, and it involved a competitor who watched his competitor operating and concluded that competitor was doing something that was against the law and filing false claims and brought a false claims act case, and the Seventh Circuit in the Lemire's case many years ago explained that a whistleblower doesn't need to be an insider, and as to Mr. McCutcheon's repeated assertion that the Lindblums didn't know anything about how Best Buy was taxing, the Lindblums knew that Best Buy was selling dishwashers and selling microwave ovens and selling them with installation and not charging ROT. That is what they knew. They knew that from their customers. They knew that from competing. They knew that because they had to cut their prices to try to compete. They knew that because they shopped on their website. They knew that information. They disclosed it to the Department of Revenue, and the Department of Revenue audited Best Buy because of that. So, clearly... Can you kind of wrap it up, please? Sorry. So, the Lindblums, obviously, the record shows the proof is in the pudding. The Lindblums had information that the Department of Revenue thought was useful because they took it and they went and audited Best Buy. Thank you, Your Honor. All right. Thank you very much. The case was well briefed, well argued. We enjoyed the presentation. We'll take this case under advisement and issue a decision in due course. Thank you very much. Thank you. Thank you.